# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 25, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000647-WC

UNITED PARCEL SERVICE, INC.                APPELLANT

V.
           ON APPEAL FROM COURT OF APPEALS
           CASE NO. 2014-CA-000570-WC
           WORKERS' COMPENSATION NO. 08-70062

ANTHONY WOODS;
HONORABLE R. SCOTT BORDERS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD           APPELLEES

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, United Parcel Service, Inc. ("UPS"), appeals a Court of Appeals decision which affirmed an award of permanent total disability ("PTD") benefits given to Appellee, Anthony Woods. UPS argues that the award of PTD benefits was inappropriate because the Administrative Law Judge ("ALJ") partially based his findings on a work-related psychological injury which had not reached maximum medical improvement ("MMI"). For the below stated reasons, we affirm the Court of Appeals.

Woods was a utility driver for UPS at the time of his work-related injury. Woods alleged that he suffered an injury to his "back and ribs" on October 8, 2008, when his tug struck a push back tractor. UPS denied the claim arguing

that any problem with Woods's back was due to an injury he suffered while playing college football.

ALJ R. Scott Borders bifurcated the claim to first determine whether Woods's lumbar condition is causally related to the October 8, 2008 accident. The ALJ entered an opinion, order, and award of interlocutory relief finding that the lumbar injury was related to the work incident. The ALJ awarded Woods temporary total disability ("TTD") and medical benefits and placed the claim in abeyance until he reached MMI. Once the claim was removed from abeyance, Woods amended his original Form 101 to include a psychological injury.

Woods testified by deposition. He stated that he returned to work after the October 8, 2008 accident but was subsequently taken off of work for several months. His last day of work for UPS was August 11, 2010, after his primary physician, Dr. Isabelita Wijangco, recommended he quit due to his lumbar spine injury. He has not returned to work since. Dr. Wijangco referred Woods to Dr. Steven Glassman who performed a lumbar fusion on Woods. Woods underwent pain management which was unsuccessful.

Woods was also referred to Dr. Gregory Singleton, a psychiatrist, for treatment of depression. Woods testified that his depression began after the lumbar fusion. Dr. Singleton prescribed Woods medication which gave him some relief from depression. However, due to insurance issues, Woods has not seen Dr. Singleton since December 2011.

Woods testified he currently experiences daily, constant back pain which goes "up and down my back and goes through my legs – everything." The pain worsens with physical activity. Due to the pain and numbness in his legs, Woods uses a cane to walk. Woods testified he has difficulty sleeping, performing household chores, sitting or standing for prolonged periods of time, and driving long distances. Woods stated that depression has affected his life and family. For example, he can no longer participate actively in his son's sporting events.

Multiple medical records were filed documenting Woods's treatment after the work-related injury. UPS filed Dr. Wijangco's records indicating that she treated Woods for depression in 2002, 2005, and 2007. She also treated Woods's low back pain caused by his work-related accident. Both parties filed the records of Dr. Glassman. Dr. Glassman diagnosed Woods with spondylolisthesis at L4-5 and performed a "TLIF" at L4-5. Dr. Glassman noted that Woods was having difficulty with ambulation, daily activities, and was experiencing constant pain. He also referred Woods for treatment due to depression and anxiety.

Woods filed a report and addendum from Dr. Warren Bilkey. He diagnosed Woods with a left tenth rib fracture which healed. He also diagnosed a lumbar sprain injury and aggravation of degenerative disc disease of the lumbar spine. He noted Woods had been diagnosed with spondylolisthesis and had undergone L4-5 decompression and fusion surgery. In his addendum, Dr. Bilkey believed that Woods's lumbar condition had reached MMI and assessed

3

a 23% impairment rating. Dr. Bilkey found the entire impairment was related to the work-related injury.

Dr. Michael Best's report was filed by UPS. He found that Woods's lumbar condition reached MMI and that he had a healed left tenth rib fracture. He assigned a 0% impairment rating for the rib injury and believed that Woods could return to his pre-work-injury job without restriction. Dr. Best found that any injury to Woods's lumbar spine was pre-existing due to his football injury. UPS also filed the report of Dr. Robert Baker who evaluated Woods's physical injury at its request. He agreed that Woods reached MMI, and assessed a 20% impairment rating for the lumbar spine condition and 0% for any rib injury. Dr. Baker permanently restricted Woods from repetitive lifting or twisting, particularly in a bent over position, and prohibited any lifting of items more than twenty-five pounds. He did not believe that Woods could return to his pre-injury job.

Woods filed the records of Dr. Singleton. He diagnosed Woods with a major depressive disorder, single episode – severe, a back injury, and pain. UPS filed the psychiatric report of Dr. Daniel Garst. He diagnosed Woods with major depressive disorder, half of which he attributed to the work-related accident and half to other non-work-related stressors. Dr. Garst assessed Woods with a 0% psychiatric impairment rating, but recommended he receive treatment including medications and psychotherapy. Neither Dr. Singelton nor Dr. Garst believed Woods's psychological injury had reached MMI.

4

After a review of the evidence, the ALJ awarded Woods PTD benefits. The ALJ found that Woods's lumbar spine injury reached MMI on April 23, 2012. However, the ALJ did not specifically state in his opinion, award, and order what impairment rating he chose for the lumbar spine injury or calculate a permanent impairment rating. The ALJ noted that Woods had not been assessed a functional impairment rating for his psychological condition, because it had not reached MMI. However, since UPS admitted Woods suffers from psychological problems related to his work-related injury, the ALJ awarded him medical benefits for treatment pursuant to KRS 342.020.

In regards to Woods's entitlement to an award of PTD benefits, the ALJ wrote:

> [Woods] has presented very credible testimony. [Woods] was employed with UPS since 1999, and had hoped on working himself into management prior to his October 8, 2008, work-related incident. As a result of his injuries and subsequent surgery, [Woods] testified that he suffers from debilitating pain and depression and anxiety that worsens his pain. In addition, [Woods] testified that he must ambulate with a cane and has difficulty in performing activities of daily living. When [Woods] performs any physical exertion he pays for it and must rest for several hours or a day. [Woods] does not feel capable of returning to work for [UPS] or for that matter working in any capacity. It is readily apparent from viewing [Woods] at the Final Hearing that he is suffering from severe emotional and psychological problems for which he needs treatment and is suffering from debilitating chronic pain. [Woods] is a very credible and believable witness.
>
> Therefore, in this specific instance, when you compare [Woods's] present situation to the mandates announced by the Supreme Court in the case of *Osborne v[]. Johnson*, 432 S.W.2d 800 (Ky. App. 1968), [sic] that [Woods] is permanently and totally occupationally disabled. While [Woods] may get better in the future with aggressive treatment, especially aggressive psychiatric treatment, to reach a point where he is able to rejoin the workforce, the [ALJ] does not believe that in [Woods's] present condition he is able to work in any capacity.

5

UPS filed a petition for reconsideration seeking additional facts regarding the ALJ's determination that Woods was entitled to PTD benefits. Specifically, UPS requested that the ALJ state whether his award of PTD benefits was due to Woods's lumbar spine injury, psychiatric condition, or a combination of the two. UPS argued that if the award of PTD benefits was based in anyway on Woods's psychological condition, the award must be withdrawn since that injury had not reached MMI. The ALJ wrote:

> The undersigned [ALJ], in making the determination that [Woods] was permanently and totally disabled based the decision on a combination of [Woods's] physical and psychological problems. It was readily apparent at the time of the Final Hearing that [Woods] was suffering from psychological issues that needed to be addressed; that as a result of his combined physical injuries and subsequent surgeries and his current psychiatric condition, that he was permanently and totally occupationally disabled.
>
> The undersigned [ALJ] does not believe the [sic] placing this claim in abeyance, reinstating TTD benefits, and allowing [Woods] to receive psychiatric treatment is necessary as the injury occurred more than 4 years ago and has been subject to intensive litigation since that time. The [ALJ] finds [Woods] is not temporarily and totally disabled as a result of his psychological condition as there is no proof in the record indicating as such. In addition, should [Woods] receive the appropriate psychiatric care and his condition improved, the [UPS] may move to Re-open this claim to reduce [Woods's] benefits pursuant to KRS 342.125.

The Board affirmed the ALJ's finding that Woods was entitled to PTD benefits. However, the Board vacated the portion of the ALJ's opinion, award, and order regarding the date on which he determined the PTD benefits should begin and remanded the matter for additional findings. The Court of Appeals affirmed, and this appeal followed.[1]

---

[1] We note that the Court of Appeals did not address the Board's partial remand for additional findings, and neither party has raised that as an issue before us.

6

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985).

UPS argues that the ALJ erred by finding that Woods was entitled to PTD benefits because he partially relied on Woods's psychological condition in finding he was unable to work. Since Woods has not reached MMI for his psychological condition, UPS argues that he is ineligible to receive any PTD due to his depression and anxiety. UPS also argues that since Woods's psychological condition may improve with treatment, the claim should be placed in abeyance and he should continue to receive TTD benefits and not PTD benefits. We disagree.

An ALJ is required to undertake a five-step analysis in order to determine whether a claimant is totally disabled. First, the ALJ must determine if the claimant suffered a work-related injury. Second, the ALJ must determine if the

7

claimant does or does not have an impairment rating. Third, based on the impairment rating, the ALJ then must determine the claimant's permanent disability rating. Fourth, the ALJ must determine whether the claimant is unable to perform any type of work. Finally, it must be determined that the claimant's total disability is a result of the work-related injury. *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396 (Ky. 2015). In determining whether a claimant is able to perform any type of work, the ALJ must consider "factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact." *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51-52 (Ky. 2000). The ALJ must take these factors and "translate the lay and medical evidence into a finding of occupational disability." *Id.* The ALJ may consider the claimant's testimony regarding his "physical condition and of his ability to perform various activities both before and after being injured." *Hush v. Abrams*, 584 S.W.2d 48 (Ky. 1979).

In this matter, the ALJ did not find that Woods was entitled to PTD benefits for his psychological condition. Instead, the ALJ used Woods's psychological and mental state as an element of his *Hamilton* analysis in determining Woods's capacity to work. The ALJ obviously found that Woods's testimony about how his work-related psychological condition affected his daily life in conjunction with his physical limitations warranted PTD benefits. Additionally, it is clear that Woods's physical injuries limit his ability to move around and lift items which would be required at work. The ALJ was within his discretion to award PTD benefits under the facts of this case.

8

On a side note, the ALJ failed to specifically state in his opinion, order, and award what impairment rating he chose for Woods's lumbar spine injury and did not calculate a permanent impairment rating. Since this matter is already being remanded for the ALJ to make further findings of fact regarding the date PTD benefits should begin, he should specifically state his findings on these two issues.

Thus, for the above stated reasons, we affirm the Court of Appeals. Pursuant to the Board's opinion, this matter is remanded to the ALJ with instructions to make the additional findings consistent with that opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT,
UNITED PARCEL SERVICE, INC.:

Kenneth J. Dietz
Christopher Newell

COUNSEL FOR APPELLEE,
ANTHONY WOODS:

Charles E. Jennings